UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RODNEY WILLIAMSON #186967,                    Case No. 2:18-cv-00141

                Plaintiff,                    Hon. Gordon J. Quist
                                         U.S. District Judge

    v.

JEFFREY WOODS, et al.,

                Defendants.

_____/

**REPORT AND RECOMMENDATION**

## I. Introduction

This is a civil rights action brought by state prisoner Rodney Williamson pursuant to 42 U.S.C. § 1983. Williamson alleges that all of the remaining Defendants violated his rights by refusing to allow prisoners to watch "Black entertainment" programs on television. He also says that Defendant Line retaliated against him after he complained.

In an initial screening opinion, the district court dismissed a number of claims and defendants. Williamson's remaining claims are Fourteenth Amendment equal protection claims against Defendants Rebbecca Freytag, Danny Line, and Lorry Webb, and a First Amendment retaliation claim against Defendant Line. (ECF No. 6.) These claims relate to acts that allegedly took place from June through August 2015, while Williamson was incarcerated at the Chippewa Correctional Facility (URF).

The three remaining Defendants have filed motions for summary judgment asserting that Williamson has failed to exhaust his administrative remedies with respect to all of the remaining claims.  (ECF No. 29.)  Williamson has replied.  (ECF No. 35.)

The undersigned has reviewed the pleadings and associated documents and concludes that a genuine issue of material fact exists with regard to whether Williamson exhausted his administrative remedies as to his equal protection claims against Freytag and Webb and his retaliation claim against Line.  According, the undersigned respectfully recommends that the Court deny the motion as to Williamson's equal protection claims against Freytag and Webb and his retaliation claim against Line.  The undersigned respectfully recommends that the Court dismiss Williamson's equal protection claim against Line.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the

party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims

4

internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th

Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id*. at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id*. at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id*. at ¶¶ T, FF. The Grievance and

---

[1] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

### IV. Analysis

Defendants identified four grievances that are potentially applicable to Williamson's claims based on the filing of the grievances. (ECF No. 29, PageID.146-47; *see also* ECF No. 29-3, PageID.164-65 (MDOC Step III Grievance Report listing the the following four grievances: **URF-15-09-2993-28e**, filed 9/3/15; **URF-15-08-**

**2700-17b**, filed 8/1/15; **URF-15-07-2077-17z**, filed 7/7/15 [2]; and **URF-15-07-2034-12e4**, filed 6/30/15 .)

Only one of these four grievances discussed claims related to this case and Defendants in this case.  That is grievance **URF-15-08-2700-17b**. (ECF No. 29-3, PageID.183-192.)  This grievance focuses only on Defendant Line.

At Step I of this grievance, Williamson asserted that Defendant Line threatened him for filing grievances by telling him that he would "have somebody set your ass up and put you steamboat."  (*Id*., PageID.187.)  At Step I Williamson wrote:

---

[2]     In grievance **URF-1507-2077-17z,** Williamson asserted that "staff" in the Baker housing unit, and specifically D/W Horton, denied him "TV programming" that suits his "ethnic background and interests."  (ECF No. 29-3, PageID.198.)  Williamson did not name any of the Defendants in that grievance.

*10. Grievance Coordinator*

MICHIGAN DEPARTMENT OF CORRECTIONS                                 4835-4247 10/94
**PRISONER/PAROLEE GRIEVANCE FORM**                                        CSJ-247A

Date Received at Step I    AUG 1 4 2015    Grievance Identifier: URF 15 08 27 00 17 B

| Be brief and concise in describing your grievance issue. | If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library. |
|---|---|

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Williamson | #786967 | URF | B-273 | 8/11/15 | 8/13/15 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date?  8/11/15
If none, explain why.

When I informed PC Line I was filing this grievance for retaliating against me for reporting him, he said: If you file a grievance on me I'm going to get your ass."

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

On 8/11/15 PC Line called me into his office and threaten me stating, I over stepped my boundary by writing Rum Thompson, D/W Horton and Warden Woods about the inhumane treatment of myself and the unit prisoner(s) by him and he further stated: "So you snitched me out to my supervisors about what's going on in my housing unit. I know all about you filing grievances and lawsuits, I even know about that settlement you got with the MDOC, but, if you file another complaint on me or file a grievance on me, I'll have somebody set your ass up and put you in steamboat you snitch." PC Line's office door was open and he was loud enough that other prisoner(s) heard him call me a snitch.

_Williamson_
Grievant's Signature

(*Id.*, PageID.187.)

This grievance was denied on August 17, 2015, at Step I because there existed

no evidence to support Williamson's claim. (*Id.*, PageID.188.)

Williamson filed a Step II appeal of this decision on October 12, 2015. (*Id.*,

PageID.185.) The Step II grievance was rejected as untimely because it was not filed

within 10 business days of the Step I response. A copy of the rejection letter is shown

below.

**Michigan Department of Corrections**
**GRIEVANCE REJECTION LETTER**

DATE:     **Thursday, October 22, 2015**

TO:       WILLIAMSON RODN   186967        **Location   URF   unit:**   B      **cell:**   273

FROM:     Warden's Office:

SUBJECT:  Rejection/Denial/Return of Step II Grievance

Your Step II grievance appeal regarding **Personnel**                    was received in this office
**10/22/15**           and was Rejected/Denied/Returned due to the following reason:

Per PD 03.02.130, the completed Step II form must be submitted to the Step II Grievance
Coordinator within 10 business days of receiving the Step I response or if no response was
received, within 10 business days of the due date of the Step I response, including extensions.
Any future references to this grievance should utilize this identifier:

          URF — 15 — 08 — 2700 — 17  B

(*Id.*, PageID.186.)

But, at Step III, Williamson's grievance was denied on the merits rather than

rejected.  (*Id.*, PageID.184.)  A copy of this decision is shown below.

10



STATE OF MICHIGAN
DEPARTMENT OF CORRECTIONS
LANSING

RICK SNYDER
GOVERNOR

HEIDI E. WASHINGTON
DIRECTOR

## STEP III GRIEVANCE DECISION

74355
17b

**To Prisoner:** Williamson   **#:** 186967
**Current Facility:** IBC
**Grievance ID #:** URF-15-08-2700-17b
**Step III Received:** 11/17/2015

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.

**THE STEP III APPEAL IS DENIED.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

**Date Mailed:**   JAN 2 9 2016

Richard D. Russell, Manager Grievance
Section, Office of Legal Affairs

cc: Warden, Filing Facility: URF

(*Id.*)

The MDOC Prisoner Step III Grievance Report also shows that this grievance was denied at Step III grievance rather than rejected.

| Step III Rec'd | Grievance Identifier | Grievance | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | . . . . | | | | | | |
| 11/17/2015 | URF-15-08-2700-17b | 17b | 8 | 8/14/2015 | ☐ | ☐ | ☑ | ☐ | ☑ | 1/29/2016 |

11

(*Id.*, PageID.164.)

Williamson argues that the Step II rejection was improper because he was transferred to a different facility on August 18, 2015, and he could not possibly meet the stated Step II due date of September 3, 2015, because he actually received the Step I response on September 2, 2015. (ECF No. 36, PageID.253-254.) In addition, the Step III response did not reject the grievance, but denied the grievance on the merits.

The undersigned concludes that a genuine issue of material fact exists regarding whether Williamson had a sufficient opportunity to file his Step II appeal because he was being moved to a different prison. But, more importantly, the documents provided by Defendants indicate that the MDOC overlooked the procedural irregularities associated with this grievance and denied it at Step III on the merits rather than rejecting it for being late. *See Mattox*, 851 F.3d at 590-91 (noting that when prison officials waive any procedural irregularities in a grievance, they address the grievance on the merits).

Therefore, in the opinion of the undersigned, Williamson exhausted his retaliation claim against Defendant Line.

The remaining grievances provided by Defendants for the applicable time period do not include any other relevant grievances. Williamson, however, attached to his response grievances he says he filed against Freytag and Webb. In ECF No. 36-1, he presents a Step I grievance dated July 24, 2015, against Defendant Freytag that asserts that Freytag made racially-charged statements and barred the watching

of TV programs for African-American inmates.  (*Id.*, PageID.267.)  The document lists the date of the incident as July 21, 2015, but lacks a grievance identifier number.  He also provides letters indicating that he pursued Step II and III appeals when he did not receive a response to this grievance.  (*Id.*, PageID.264-66.)  These documents are supported by a declaration.  (*Id.*, PageID.268-69.)  The claim in this grievance appears to correspond to a claim Williamson made in his complaint.  (ECF No. 1, PageID.8.)

Similarly, in ECF No. 36-2, Williamson presents a Step I grievance dated August 4, 2015, against Defendant Webb.  (*Id.*, PageID.271.)  He alleges racial discrimination relating to the use of a TV on that date.  This grievance also lacks an identifier number.  Williamson presents letters indicating that he pursued Step II and III appeals when he did not receive a response to this grievance.  (*Id.*, PageID.273-74.)  And he supports these documents with a declaration  (*Id.*, PageID.275-76.)

The implication here is that Williamson filed grievances against Freytag and Webb, but the grievances were either lost or ignored.  Either way, Williamson's suggestion is that the grievance process was not available.  Defendants did not file a reply brief and have not addressed these claims by Williamson.  Accordingly, the undersigned concludes that a genuine issue of material fact exists as to the question of whether Williamson exhausted his administrative remedies relating to his equal protection claims against Freytag and Webb.

Williamson has not presented documents indicating that he exhausted his administrative remedies with regard to his equal protection claim against Defendant Line.

## V.  Recommendation

The undersigned concludes that a genuine issue of material fact exists with regard to whether Williamson exhausted his administrative remedies as to his equal protection claims against Freytag and Webb and his retaliation claim against Line. Accordingly, the undersigned respectfully recommends that the Court deny the motion as to Williamson's equal protection claims against Freytag and Webb and his retaliation claim against Line.[3]  The undersigned also recommends that the Court dismiss Williamson's equal protection claim agains Line because that claim was not exhausted.

Dated:  January 23, 2020                    /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[3]      Defendants may wish to request a bench trial to resolve these issues.  See *Lee v. Willey*, 789 F.3d 673 (6th Cir. 2015)

14